IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**VICTOR ANDINO, et al.,**

    **Plaintiffs,**

    **v.**                                   Civil No. 11-1715 (GAG)

**MUNICIPALITY OF CATAÑO, et al.,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff Victor Andino ("Plaintiff") and his spouse filed the instant action against the Municipality of Cataño (the "Municipality"), Mayor Jose A. Rosario and Plaintiff's immediate supervisor, Jesus Diaz, in their official and individual capacities (collectively "Defendants") on July 22, 2011. (Docket No. 1.) Plaintiff claims Defendants violated 42 U.S.C. § 1981, 42 U.S.C. § 2000(e) et seq., 29 P.R. LAWS ANN. § 185 et seq., and 31 P.R. LAWS ANN. § 5141. Plaintiff requests reinstatement, $500,000 for lost wages and lost future earnings, $1,000,000 for emotional harm, $500,000 in punitive damages, an award for harms arising under the aforementioned laws, and an award for fees and costs. (Id. at 4-6.) The court presently considers the Municipality's motion for summary judgment, which also requests summary judgment on behalf of Defendants Rosario and Diaz. For the following reasons, the court **GRANTS** Defendants' motion for summary judgment. (Docket No. 52.)

**I.  STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue

**Civil No. 11-1715 (GAG)**                        2

is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.    FACTUAL BACKGROUND[1]**

---

[1] Plaintiff's complaint states, "In July 2010, Ms. [sic] Diaz refused to approve Mr. Andino's vacation and also refused Mr. Andino's requests for brief amounts of leave to address issues with his children." (Docket No. 1 at 3.) To reiterate, Plaintiff does not allege a hostile work environment, violations of wage-and-hour laws, or any other federal claims aside from racial discrimination under Title VII and 42 U.S.C. § 1981. Therefore, the court considers this proffer only

**Civil No. 11-1715 (GAG)**                                              3

Plaintiff worked as Citizen Services Coordinator for the Community Faith Based Initiatives Office in Cataño. Plaintiff states that he began working for Cataño in 1979 and became a permanent employee in civil defense in 1991. (Id. at 2.) He claims he earned his nursing license in 1982 and became an assistant emergency medical technician who drove ambulances in 1989. (Id.) Plaintiff purportedly worked in the Parks and Recreation Department as a supervisor in the 1990s and coordinated community outreach programs for addicts for the past decade. (Id.)

On January 12, 2010, Defendants suspended Plaintiff for allegedly refusing an order from Defendant Rosario's executive assistant to "take a person who needed to detox to Ponce at 4:00 p.m. – in his personal car because the municipality had no vehicle available – because the hospital in Ponce stopped taking new patients at the hour, and it was at least a 90 minute ride from Cataño to Ponce, without even considering rush hour traffic." (Id. at 3; see also Docket No. 60-1.) Plaintiff claims he met with Defendant Rosario, who "told him not to worry," but subsequently authorized his suspension. (Docket No. 1 at 3.)

Plaintiff states that Defendant Diaz began supervising Plaintiff in June 2010 and "immediately began harassing [Plaintiff] based on his race and color." (Id.) Plaintiff asked Defendant Diaz "why he was taking days away . . . if [Plaintiff] was doing his job," referring to Defendant Diaz's supposed refusal of Plaintiff's leave requests. Defendant Diaz allegedly replied, in a raised voice, "He had to be black.  He had to be black." (Docket No. 52-4 at 28, ¶¶ 11-20.) Defendant Diaz also allegedly "closed the door that connected [Plaintiff's] office to the photocopy room, where [Plaintiff] needed access for any document he would have wanted to print for his work," and "refused to let [Plaintiff] print documents from any other computer," thereby forcing Plaintiff to "stop redacting any work related document." (Id.) On August 31, 2010, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). (Id.) On September 3, 2010, Plaintiff claims he gave a letter expressing his concern with Defendant Diaz's behavior to Defendant Rosario's executive assistant. (See Docket No. 68-5.)

---

to the extent it substantiates Plaintiff's claim for racial discrimination.

**Civil No. 11-1715 (GAG)**　　　　　　　　　　　　4

On October 19, 2010, Defendant Diaz demanded Plaintiff open an office door during Plaintiff's lunch break for safety purposes, and Plaintiff denied the request. (See Docket No. 1 at 4.) On October 21, 2010, Defendant Diaz allegedly sent a maintenance worker to Plaintiff's office to remove a stove Plaintiff used to cook lunch for the homeless. The maintenance worker supposedly stated that Defendant Diaz expressed concern over the stove's potential danger, and Plaintiff removed his stove. (Id. at 4.)  Defendant Diaz subsequently filed a complaint against Plaintiff for insubordination, and Defendant Rosario terminated Plaintiff with the Municipality's support following an administrative report and recommendation. (Id.; see also Docket No. 60-2.) Plaintiff was officially terminated on January 31, 2011. (Docket No. 60-2.) Although Plaintiff claims Defendant Rosario proceeded "[w]ithout hearing [Plaintiff's] side of the story," Plaintiff does not raise due process claims here. (Docket No. 59-1 at 3, ¶ 5.)

### III. DISCUSSION

The court **GRANTS** Defendants' motion for summary judgment. (Docket No. 52.) The same legal framework applies to Title VII and 42 U.S.C. § 1981 claims rooted in indirect evidence. Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011). A prima facie case for discrimination presents a four-part test: (1) the plaintiff must be a member of a protected class; (2) he must be qualified for his job; (3) he must suffer an adverse employment action at the hands of his employer, and; (4) there must be some evidence of a causal connection between his membership in a protected class and the adverse employment action. Id. (citing cases). This burden is not onerous. Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011). Defendants "may rebut this presumption by articulating a non-discriminatory reason for the adverse employment action . . . which eliminates the presumption and shifts the burden back to [Plaintiff] to point to sufficient evidence to demonstrate that [Defendants'] proffered reason is mere pretext and that the true reason is discriminatory." Id. (citing Smith v. F.W. Morse & Co., 76 F.3d, 413, 421 (1st Cir. 1995)).

Defendants admit Plaintiff meets prongs (1) and (3) of the prima facie burden. (Docket No. 52 at 4.) Defendants state that Plaintiff cannot satisfy prongs (2) and (4) because "[p]rong 2 requires

**Civil No. 11-1715 (GAG)**                                  5

a showing that plaintiff's job performance was satisfactory," and Plaintiff's replacement falls within the same protected class as Plaintiff, respectively. The second prong, however, requires only that Plaintiff be "qualified for his job." <u>Bhatti</u>, 659 F.3d at 70. The Municipality employed Plaintiff for several years and neglects to proffer any evidence revealing unsatisfactory performance prior to 2010. Defendants seemingly concede Plaintiff's satisfactory qualifications in a submission to the court, wherein the Municipality found that Plaintiff "is the only employee[] who is educated and trained . . . and who has the necessary workshops to attend [to] cases of persons with controlled substances addiction problems [sic]." (Docket No. 60-1 at 2.) Therefore, Plaintiff satisfies prong (2).

Concerning prong (4), Plaintiff admits his replacement may be a member of the same protected group as Plaintiff, but with a lighter complexion. Nonetheless, the court refuses to factually determine the extent to which the replacement employee bears sufficiently similar racial characteristics to Plaintiff. Plaintiff pleads a causal connection between his race and the purported harassment that led to his termination, which satisfies his burden under <u>Bhatti</u>. To reiterate, establishing a <u>prima facie</u> case for racial discrimination does not impose an onerous burden. <u>Martinez-Burgos</u>, 656 F.3d at 12.

Proceeding to whether Defendants offer a legitimate, non-discriminatory reason for termination, Defendants base Plaintiff's termination on two acts of insubordination, for which the first offense mandates a thirty-day suspension and the second requires termination under Municipality rules. (<u>See generally</u> Docket Nos. 60-1 and 60-2.) The Municipality and Defendant Rosario disciplined Plaintiff for the first infraction on January 12, 2010, for intentionally disregarding the instructions of Defendant Rosario's executive assistant to drive a patient to Ponce. (<u>See</u> Docket No. 60-1.) The Municipality and Defendant Rosario terminated Plaintiff following a second finding of insubordination for failure to open a door in his place of employment, despite a direct order by Defendant Diaz, ostensibly for safety reasons. (<u>See</u> Docket No. 60-2.)

Plaintiff vehemently protests the merits of the Municipality's findings; however, the province

**Civil No. 11-1715 (GAG)**                                      6

of this court does not extend to resolution of local employment disputes, nor does Plaintiff raise federally based employment claims beyond racial discrimination. See Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000) (stating, "Title VII . . . does not prohibit wrongful discharge . . .). Plaintiff engaged the administrative review process in the Municipality to appeal the insubordination findings, and the court need not rehash the Municipality's lengthy discussions of fact and law found in its two proceedings. (See Docket Nos. 60-1 and 60-2.) The court looks only to Defendants' rationale: the Municipality claims it terminated Plaintiff for disregarding a direct order from the Mayor's executive assistant, and for defying a direct order to open a door for safety purposes.[2] Disobedience certainly constitutes a legitimate, non-discriminatory reason for termination that shifts the burden back to Plaintiff. See e.g., Williams, 220 F.3d at 19 (holding that disobedience exemplifies insubordination).

Plaintiff must therefore "point to sufficient evidence to demonstrate that [Defendants'] proffered reason is mere pretext and that the true reason is discriminatory." Martinez-Burgos, 656 F.3d at 12 (citing Smith v. F.W. Morse & Co., 76 F.3d, 413, 421 (1st Cir. 1995)). Plaintiff fails to satisfy this requirement. During Plaintiff's deposition, defense counsel asked, "Is it your contention that Mayor Rosario has discriminated against you because of your race in any way," to which Plaintiff replied, "No, I can't say that." (Docket No. 52-4 at 41, ¶¶ 10-13.) Furthermore, counsel asked, "So you don't contend - it's not your contention that you were suspended because of your race?" Plaintiff replied, "I don't think so. Maybe they have it in their head, but I don't think so." (Id. at 39-40, ¶¶ 22-1.) Clearly, Plaintiff does not believe he was suspended because of his race, or that Defendant Rosario discriminated against him because of his race.

However, "An employer who is aware of racial . . . harassment that is making the workplace

---

[2] Plaintiff continuously asserts that Defendants terminated Plaintiff, in part, because Plaintiff kept a gas stove in his office to feed the homeless. The Municipality makes clear that "no infraction whatsoever" occurred regarding the stove, its presence, and its removal. (See Docket No. 60-2 at 6-7.)

**Civil No. 11-1715 (GAG)**                                                     7

intolerable for the targets of the harassment, and does nothing to correct the situation, is guilty of violating Title VII." EEOC v. Pipefitters Ass'n Local Union 597, 334 F.3d 656, 658-89 (7th Cir. 2003) (Posner, J.). Plaintiff avers that Defendant Rosario offended Title VII by allegedly failing to proactively respond to Plaintiff's accusations against Defendant Diaz after he wrote a letter addressed to "Whom It May Concern" expressing his grievances and supposedly gave it to Defendant Rosario's executive assistant. (See Docket Nos. 68-5., 59-2, ¶ 17.) Taken in the light most favorable to Plaintiff, Defendant Rosario was on notice that Plaintiff took issue with Defendant Diaz's behavior. (Docket No. 52-4 at 28, ¶¶ 11-20.) The critical issue here is whether Defendant Diaz's purported behavior demonstrated "that [Defendants'] proffered reason [for termination] is mere pretext and that the true reason is discriminatory," and imposed upon Plaintiff an intolerable workplace environment requiring correction by Defendant Rosario.[3] Martinez-Burgos, 656 F.3d at 12 (citing Smith v. F.W. Morse & Co., 76 F.3d, 413, 421 (1st Cir. 1995)); see also Pipefitters, 334 F.3d at 658-59.

In Hazard-Chaney v. Optima Healthcare, the First Circuit found that the only evidence with racial content was a statement in which the decision-maker referred to the plaintiff as "black," allegedly implying low expectation as to plaintiff's productivity. 56 Fed. Appx. 521, 522 (1st Cir. 2003) (per curiam). The plaintiff pointed to "several other incidents that she view[ed] as racially motivated . . . but nothing in the circumstances point[ed] to race as the underlying motivation." Id. at 523. The court ultimately found that the plaintiff failed to sufficiently proffer evidence indicating underlying discriminatory intent. The court follows the First Circuit's rationale in Hazard-Chaney in finding that, here, Plaintiff also fails to satisfy his burden.

Assuming, arguendo, that Defendant Diaz remarked, "He had to be black, he had to be black," the statement nonetheless constitutes the only discriminatory statement found in the record.

---

[3] As previously discussed, Plaintiff clearly states that he does not believe his suspension occurred because of racial discrimination. (Docket No. 52-4 at 39-40, ¶¶ 22-1.) The court therefore considers only the actions occurring once Defendant Diaz became Plaintiff's supervisor.

**Civil No. 11-1715 (GAG)**                                           8

Plaintiff proffers two instances of subsequent harassment: 1) a demand to open an office door, supposedly for safety reasons, for which the Municipality found Plaintiff insubordinate, and; 2) Defendant Diaz's requirement that Plaintiff remove his gas stove, for which the Municipality found Plaintiff was not insubordinate. (See Docket No. 60-2.) These instances do not contain blatantly racist statements, and one of the purported acts of harassment arose because of safety reasons. Furthermore, administrative review of Defendant Diaz's insubordination recommendation substantiated Diaz's complaint. In the face of an insubordination finding, Defendant Diaz's "isolated remark, even combined with the . . .racially neutral incidents," is "insufficient to invigorate [Plaintiff's] claim of pretext." Hazard-Chaney, 56 Fed. Appx. at 523. Defendants' motion for summary judgment is **GRANTED.**[4]

---

[4] Although not dispositive of this case, Mayor Rosario claims he does not know whether slavery existed in Puerto Rico. Mayor Rosario's deposition testimony reads as follows:

> Plaintiff's Attorney: Do you know that slavery existed in Puerto Rico?
> Mayor Rosario: I mean, I'm interested in the present, I live in the present . . .What existed before, I can't say for sure, because I don't know.
> Plaintiff's Attorney: You don't know if there was slavery in Puerto Rico?
> Mayor Rosario: I don't have any proof of that.

(Docket No. 68-8 at 2-3.) The court, in case the Mayor lives under a rock, feels compelled to point out that this is 2012. This statement is offensive and ignorant. On March 22, 1873, the Spanish National Assembly abolished slavery in Puerto Rico. Accordingly, the court reminds Mayor Rosario that Puerto Rico celebrates Emancipation Day on March 22nd, refers him to several works on racism and slavery in Puerto Rico, and encourages him to read the Emancipation Proclamation of 1863, the Civil Rights Acts of 1871 and 1964, and the Thirteenth Amendment to the Constitution as "proof" that racism and "slavery existed in Puerto Rico" and the United States. See generally, GUILLERMO A. BARALT, SLAVE REVOLT IN PUERTO RICO: SLAVE CONSPIRACIES AND UNREST IN PUERTO RICO 1795-1873 (Wiener Publishers 2007); JOSEPH C. DORSEY, SLAVE TRAFFIC IN THE AGE OF ABOLITION: PUERTO RICO, WEST AFRICA, AND THE NON-HISPANIC CARIBBEAN (University Press of Florida 2003); LUIS ANTONIO FIGUEROA, SUGAR, SLAVERY & FREEDOM IN NINETEENTH-CENTURY PUERTO RICO (University of North Carolina Press 2005); CONGRESSMAN JOHN LEWIS, WALKING WITH THE WIND: A MEMOIR OF THE MOVEMENT (Houghton, Mifflin, & Harcourt 1998); FRANCISCO A. SCARANO, SUGAR AND SLAVERY IN PUERTO RICO (University of Wisconsin Press 1984); CHRISTOPHER SCHMIDT-NOWARA, EMPIRE AND ANTISLAVERY: SPAIN, CUBA, AND PUERTO

**Civil No. 11-1715 (GAG)**                                9

**IV.   CONCLUSION**

For the reasons stated above, the court **GRANTS** Defendants' motion for summary. (Docket No. 52.)

        **SO ORDERED**

In San Juan, Puerto Rico this 26th day of November, 2012.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge

---

RICO 1833-1874 (University of Pittsburgh Press 2012).