IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**VICTOR ANDINO, et al.,**

    **Plaintiffs,**

    **v.**

**MUNICIPALITY OF CATAÑO, et al.,**

    **Defendants.**

**Civil No. 11-1715 (GAG)**

**OPINION AND ORDER**

Plaintiffs move for reconsideration (Docket No. 71) of the court's opinion and order granting defendant's motion for summary judgment (Docket No. 70).

**I.  Standard of Review**

A motion for reconsideration may not serve as a vehicle to relitigate matters previously litigated and decided by the court. Villanueva-Mendez v. Vazquez, 360 F. Supp. 2d 320, 322 (D.P.R. 2005). Courts entertain motions for reconsideration that seek to correct manifest errors of law or fact, present newly discovered evidence, or arise due to intervening changes in law. See Rivera Surillo & Co. v. Falconer Glass. Indus. Inc., 37 F.3d 25, 29 (1st Cir. 1994) (citing FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992)); Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282, 286 (D.P.R. 1998)). A losing party may not "repeat old arguments previously considered and rejected, or . . . raise new legal theories that should have been raised earlier." Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990).

**II.  Discussion**

Plaintiffs state the court granted summary judgment because Defendants provided a

**Civil No. 11-1715 (GAG)**

legitimate, non-discriminatory reason for Andino's termination, specifically, two separate incidents of insubordination. (Docket No. 71 at 1-2.) The court did not grant summary judgment merely because Defendants presented what the court deems a legitimate, non-discriminatory reason for termination. This determination is the second step of Title VII analysis for claims rooted in indirect evidence. (See Docket No. 70 at 4.) Plaintiffs cite Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 39-40 (1st Cir. 2003), for the proposition that "using insubordination as a basis for dismissal could be considered pretext by a jury where there was testimony from which it could be inferred that the supervisor withdrew the order because the conduct had been permitted in the past." (Docket No. 71 at 2.) Plaintiff elaborates, "The First Circuit reasoned that one 'way of demonstrating pretext is by showing that the employer's proffered'" explanation is unworthy of credence. (Id.)

Plaintiffs attempt to fit into this mold Andino's and his co-worker's sworn statements. Specifically, Plaintiffs claim that finding him insubordinate was unjustified because "the rehabilitation center in Ponce where the Mayor's executive assistant ordered Mr. Andino to take the patient closed at 3:00 p.m. every day, so it made no sense for Mr. Andino to drive two hours to Ponce only to be sent back to Cataño." Plaintiffs argue this testimony "undermines [D]efendants' contention that their only intent was to sanction Mr. Andino." (Docket No. 71 at 2.) Plaintiffs contend this offends Che's directive that "determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, as proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" (Id. at 3 (quoting 342 F.3d at 40).) Plaintiff supports this argument by citing Acevedo-Parillo v. Novartis Ex-Lax, Inc. to substantiate that "a false reason for dismissal is evidence, sometimes quite good evidence, that the reason for the dismissal was" discriminatory. (Id. at 3 (citing 696 F.3d 128, 141 (1st Cir. 2012)).)

Regarding the insubordination findings, however, the court disagrees with Plaintiffs' contention that "Mr. Andino's lay response to counsel's requests that he point to a smoking gun are merely the lay expressions of a recognized legal tenet that smoking gun evidence is rarely available

2

**Civil No. 11-1715 (GAG)**

in discrimination cases." (Docket No. 71 at 3.) Defendants' counsel asked, "Is it your contention that Mayor Rosario has discriminated against you because of your race in any way," to which Andino replied, "No, I can't say that." (Docket No. 52-4 at 41, ¶¶ 10-13.) Furthermore, counsel asked, "So you don't contend – it's not your contention that you were suspended because of your race?" Plaintiff replied, "I don't think so. Maybe they have it in their head, but I don't think so." (Id. at 39, ¶¶ 22-25; 40, ¶ 1.) This statement is clear: Mr. Andino stated that his supervisors may have suspended him because of his race, but he does not think so. This testimony discredits Plaintiffs' allegation that the first infraction was pretextual.

Furthermore, Plaintiffs cannot demonstrate that the true reason behind Andino's termination was discriminatory. Plaintiffs state, "This Court also discounts the statement by Jesus Diaz, Mr. Andino's supervisor, that Mr. Andino just had to be black when Mr. Andino complained that Mr. Diaz had reduced his vacation for matters that should have been attributed to sick leave." (Docket No. 71 at 3.) Plaintiffs contend, "The implication was that there was some [sic] improper in a black man, Mr. Andino, asserting his rights as an employee, that perhaps Mr. Andino was acting presumptuous, or even above his station." (Id.) The court did not discount Defendant Diaz's statement. Rather, it squarely considered it, as Plaintiffs' citation of Hazard-Chaney, the First Circuit case upon which the court relied, clearly reveals. (Id.) Plaintiffs claim that the Hazard-Chaney court "affirmed the District Court's rejection of [a supervisor's consistent reference to appellant as 'black' or 'African American'] that was inadmissible hearsay to prove racial discrimination." (Id. at 3-4.) Plaintiffs' contention falters, however, because the Hazard-Chaney court grappled with the ostensibly inadmissible statement as though it was admissible. ("In the face of a downward progression . . . the [decision-maker's][1] isolated, unsubstantiated remark - were it to

---

[1] In Hazard-Chaney, the "only evidence with racial content was a statement reported by appellant from an Optima recruiter that" Dr. Keith Lammers, "appellant's supervisor," consistently "referred to [appellant] as Afro - 'African-American' or 'black,' in any of the management meetings, reminding people that" there exists a "low expectation as to productivity" for African Americans. 56 Fed. Appx. 521, 522 (1st Cir. 2003).

**Civil No. 11-1715 (GAG)**

<u>be considered as non-hearsay</u>, and even when combined with the several racially neutral incidents she cites - is insufficient to invigorate her claim of pretext.") (emphasis added).

Plaintiffs elected not to pursue wrongful termination or other employment-based claims in this litigation, focusing only on raced-based discrimination under Title VII and Section 1981. Perhaps there exist valid claims elsewhere, but the court affirms its judgment as to the laws Plaintiffs claim Defendants offended.

**III.   Conclusion**

For the abovementioned reasons, the court **DENIES** Plaintiffs' motion to reconsider. (Docket No. 71.)

**SO ORDERED.**
In San Juan, Puerto Rico this 12th day of December 2012.

/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge